BOLIN, Justice.
Fred G. Eagerton and Nancy Eagerton petition this Court for a writ of mandamus directing the Baldwin Circuit Court to enter a judgment as a matter of law in their favor and against SE Property Holdings, LLC, consistent with this Court’s mandate in Eagerton v. Vision Bank, 99 So.3d 299 (Ala.2012) (“Eagerton I”). SE Property Holdings, LLC, is the successor by merger to Vision Bank. We hereinafter refer to *268 Vision Bank and/or SE Property Holdings, LLC, as “the bank.” We grant the petition.

I. Facts and Procedural Histo'ry

The underlying facts of this case are recited in full in Eagerton I:
“Dotson 10s, LLC, is an Alabama limited liability company organized to operate the Rock Creek Tennis Club located at 142 Clubhouse Drive in Fairhope. John W. Dotson, Jr., and Elizabeth E. Dotson (hereinafter sometimes collectively referred to as ‘the Dotsons’) are the sole members of Dotson 10s.
“On December 9, 2007, Dotson 10s executed a ‘Multipurpose Note and Security Agreement’ with the bank in the amount of $550,677.53 (hereinafter referred to as ‘the original loan’); the maturity date of the original loan was December 9, 2010. In conjunction with the original loan, the bank obtained unlimited personal guaranties from both John W. Dotson, Jr., and Elizabeth E. Dotson. The bank also obtained limited personal guaranties from both Fred G. Eagerton and Nancy Eagerton; the Eagertons are Elizabeth Dotson’s parents. The original loan was secured by a mortgage on the real property located at 142 Clubhouse Drive (hereinafter referred to as ‘the first mortgage’).
“On December 11, 2008, Dotson 10s executed a subsequent ‘Multipurpose Note and Security Agreement’ with the bank in the amount of $222,513.56 (hereinafter referred to as ‘the second loan’); this loan is identified by the bank as loan number 302669. The second loan was guaranteed solely by the Dotsons; the Eagertons neither were parties to the transaction involving the second loan, nor did they execute personal guaranties for the repayment of the second loan. The second loan was secured by what is titled a ‘2nd Real Estate Mortgage’ on the same real property located at 142 Clubhouse Drive (hereinafter referred to as ‘the second mortgage’).
“In April 2009, the bank declared the original loan and the second loan in default and accelerated the balances due under both loans; Dotson 10s failed to pay the balances. The bank filed a breach-of-contract action in the Baldwin Circuit Court against Dotson 10s, as the primary obligor of the original loan and the second loan; the Dotsons, as personal guarantors of the original loan and the second loan; and the Eagertons, as personal guarantors of the original loan.
“On May 28, 2009, Dotson 10s filed a petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Alabama (‘the bankruptcy court’). On August 25, 2009, Dotson 10s filed with the bankruptcy court its proposed Chapter 11 plan of reorganization, which provided, in part, that the original loan and the second loan would be combined (hereinafter referred to as ‘the consolidated loan’) and paid in full. The proposed plan states, in pertinent part:
“ ‘This class consists of the Allowed Secured Claim of Vision Bank, which claim is secured by 6.5 acre parcel where the clubhouse, tennis courts and swimming pool exist. The two notes comprising this claim and totaling approximately $823,4.11 will be combined, and paid at 6% in equal monthly installments of $5,900 beginning 30 days after confirmation. The notes will be paid in full within 240 months.... Vision Bank will retain its lien on the subject property until the debt is paid in full.’
“(Emphasis added.)
*269 “On December 1, 2009, the bankruptcy court conducted a confirmation hearing regarding the proposed reorganization plan; the Dotsons and certain bank representatives were present at that hearing. Before the hearing, the bank representatives negotiated additional terms that were favorable to the bank. On December 10, 2009, the bankruptcy court entered an order confirming the plan of reorganization, as amended. The order states, in pertinent part:
“‘(2) The secured claim of Vision Bank is determined to be $795,908.84 as of December 1, 2009; (3) [Dotson 10s] shall pay the secured claim to Vision Bank in equal monthly payments of $6,172.64 per month beginning January 1, 2010. Interest is calculated at 7% per annum. The debt to Vision Bank shall mature and become fully due and payable on January 1, 2012; (4) [Dotson 10s] shall have no grace period. If any payment is not paid on or before the due date, the automatic stay shall terminate and Vision Bank is authorized to immediately foreclose its mortgage without further order of this Court...
“(Emphasis added.) The bank thereafter assigned a new loan number to the consolidated loan.
“In March 2010, Dotsons 10s defaulted under the bankruptcy plan, and the bankruptcy court entered an order dismissing the bankruptcy action. On May 12, 2010, the bank conducted a foreclosure sale of the real property pursuant to the bankruptcy court’s order set out above. The bank purchased the real property for $600,000 and applied the proceeds entirely to the consolidated loan.
“On July 15, 2010, the Baldwin Circuit Court (hereinafter referred to as ‘the trial court’), in response to a motion for a summary judgment filed by the bank, entered a partial summary judgment in favor of the bank against Dotson 10s but denied the motion as to the Eagertons. The bank, thereafter, filed another motion for a ‘final partial summary judgment’ against the Eagertons, arguing that the Eagertons were responsible under their guaranty contracts for the deficiency remaining on the consolidated loan after allocation of the foreclosure proceeds to that loan. Specifically, the bank argued that because the original loan represented 71.07% of the consolidated loan, the Eagertons should be liable for 71.07% of the balance remaining on the consolidated loan after application of the foreclosure proceeds, as well as 100% of the interest, attorney fees, etc. The Eagertons moved for a summary judgment as well, arguing as a defense a material alteration of their guaranty contracts. On May 24, 2011, the trial court, apparently relying on the bank’s pro rata theory, entered a partial summary judgment in favor of the bank and against the Eagertons in the amount of $208,906.40. The trial court certified its judgment as final pursuant to Rule 54(b), Ala. R. Civ. P., specifically reserving jurisdiction to determine at a later date the appropriate amount of attorney fees and costs owed to the bank, if any, relating to its collection efforts. The Eagertons appeal.”
99 So.3d at 301-03 (footnotes omitted).
On appeal, the Eagertons argued that the Chapter 11 reorganization of the debts of Dotson 10s, LLC, in the bankruptcy court, i.e., the consolidation of the original loan with the second loan, created a new indebtedness not encompassed by their guaranty contracts. The Eagertons therefore argued that the creation of this new indebtedness, without their knowledge or consent, operated to discharge them from *270 any further obligations under their guaranty contracts. The bank, on the other hand, argued, among other things, that the consolidated loan was a replacement note contemplated by the guaranty contracts and that the Eagertons had waived the material-modification defense.
This Court, in Eagerton I, concluded that the Eagertons’ guaranty contracts were unambiguous; that based on the language in the guaranty contracts the Ea-gertons did not intend to guarantee any indebtedness other than that indebtedness arising out of the original loan and any extensions, renewals, or replacements thereof; and that, once the Eagertons’ original loan was modified pursuant to the Chapter 11 reorganization of Dotson 10s, the Eagertons were at that point discharged from any further obligations under their guaranty contracts:
“In sum, Dotson 10s and the bank negotiated a new loan that not only changed the legal identity of the original loan, but also altered the Eagertons’ original obligation under their guaranty contracts. The Eagertons did not consent to guarantee the second loan, which was combined with the original loan to create the consolidated loan — a new indebtedness. These above-stated alterations occurred without the Eagertons’ knowledge and consent. Accordingly, the Eagertons cannot be held personally liable for a loan that no longer exists, i.e., the original loan, nor can they be held personally liable for a loan that is not an extension, renewal, or replacement of the original loan, as defined by their guaranty contracts.

“Based on the foregoing, the trial court’s summary judgment against the Eagertons in favor of the bank is reversed, and the cause is remanded to the trial court for proceedings consistent with this opinion.”

99 So.3d at 310 (emphasis added).
After this Court remanded the cause to the trial court, the Eagertons filed a renewed motion for a summary judgment. The bank responded in opposition and moved for additional discovery to resolve an alleged factual dispute regarding the Eagertons’ knowledge of and consent to Dotson lOs’s bankruptcy plan. The trial court allowed additional discovery and thereafter conducted an evidentiary hearing. On December 5, 2012, the trial court entered on order denying the Eagertons’ motion for a summary judgment. The Ea-gertons thereafter filed this petition for a writ of mandamus. The dispositive issue for our review is whether the trial court followed the mandate of this Court in Ea-gerton I.

II. Standard of Review and Applicable Law

“ ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995).”
Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala.2003).
“The question of whether a trial court after remand has correctly interpreted and applied an appellate court’s decision is properly reviewable by a petition for a writ of mandamus.” Ex parte United States Fid. & Guar. Co., 585 So.2d 922, 924 (Ala.1991).
In Ex parte Alabama Power Co., 431 So.2d 151 (Ala.1983), this Court stated:
*271 “ ‘It is the duty of the trial court, on remand, to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court. No judgment other than that directed or permitted by the reviewing court may be entered .... The appellate court’s decision is final as to all matters before it, becomes the law of the case, and must be executed according to the mandate, without granting a new trial or taking additional evidence....’”
431 So.2d at 155 (quoting 5 Am.Jur.2d Appeal & Error § 991 (1962)).

III. Discussion

The Eagertons emphasize in their petition for a writ of mandamus that the facts that were before this Court on appeal in Eagerton I were largely undisputed and that they were clearly entitled to a summary judgment based upon this Court’s mandate in Eagerton I. We agree. This case was submitted to the trial court on cross-motions for summary judgment. Our reversal of the trial court’s summary judgment in favor of the bank in Eagerton I was not based upon a disputed issue of material fact, i.e., whether the Eagertons had notice of, or consented to, the modification of their guaranty contracts. See Rule 56(c)(c), Ala. R. Civ. P. The Eager-tons pleaded the material-modification defense as an affirmative defense in their answer to the original complaint; they raised the material-modification defense in their motion for a summary judgment; and they raised the material-modification defense on appeal. In none of the proceedings below did the bank ever dispute that the Eagertons did not know of or consent to Dotson lOs’s bankruptcy plan, which modified the Eagertons’ guaranty contracts. Clearly, the Eagertons could not have consented to the modification of their guaranty contracts when they were not present at the confirmation hearing during which time John and Elizabeth Dotson and bank representatives negotiated additional terms that were favorable to the bank. Our resolution of this case in Eagerton I was based upon the interpretation of the Eagertons’ guaranty contracts, which, we held, as a matter of law, were unambiguous. See 38A C.J.S. Guaranty § 97, at 704 (2008) (“A guarantor is discharged if, without his or her consent, the contract of guaranty is materially altered.”). In Eagerton I, this Court specifically held that “although the Eagertons may have waived any defenses they may have had regarding the original indebtedness, the Eagertons did not waive any defenses regarding the consolidated loan, which was created by the bank and the Dotsons without the Eagertons’ consent.” 99 So.3d at 310.

TV. Conclusion

Although this Court, in Eagerton I, did not expressly direct the entry of a summary judgment in favor of the Eager-tons, we nonetheless reversed the summary judgment in favor of the bank after concluding that the Eagertons had been discharged from any further liability under their guaranty contracts. In other words, the Eagertons were entitled to a summary judgment. This Court’s opinion in Eagerton I was an adjudication on the merits, and it became the law of the case. Accordingly, the trial court, on remand, was without jurisdiction to conduct an evi-dentiary hearing to allow additional evidence on an undisputed material fact. See Ex parte Alabama Power Co., supra (holding that when an appellate court’s mandate does not include language expressly mandating a new trial or, in this case, an evidentiary hearing, the trial court must enter a judgment as directed by the man *272 date). See also Ex parte Queen, 959 So.2d 620, 621 (Ala.2006) (“[A]fter a case is remanded, the trial court may enter ‘ “ ‘[n]o judgment other than that directed or permitted by the reviewing court.... The appellate court’s decision is final as to all matters before it, becomes the law of the case, and must be executed according to the mandate, without granting a new trial or taking additional evidence.’”’ [Ex parte Edwards, 727 So.2d 792,] 794 [ (Ala.1998) ] (quoting Ex parte Alabama Power Co., 431 So.2d 151 (Ala.1983), quoting in turn 5 Am.Jur.2d Appeal & Error § 991 (1962))).” Accordingly, the Eagertons are entitled to mandamus relief.
For the foregoing reasons, we grant the petition for the writ of mandamus and direct the trial court to vacate its December 5, 2012, order denying the Eagertons’ motion for a summary judgment and to enter a judgment in favor of the Eagertons consistent with this Court’s mandate in both Eagerton I and this opinion.
PETITION GRANTED; WRIT ISSUED.
MOORE, C.J, and STUART, PARKER, MURDOCK, SHAW, MAIN, WISE, and BRYAN, JJ., concur.